IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Rita S. Whites, | ) | Civil Action No. 8:10-cv-3302-DCN-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

In June 2006, Plaintiff filed applications for DIB and SSI, alleging disability as of August 26, 2005.[3] [R.13, 84; *see also* R. 428–45 (Full DIB Review Sheet); R. 446–52 (Special Title II Workload Sheet).] The claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. 13, 27–28, 72–77.] On January 5, 2007, Plaintiff filed a request for hearing before an administrative law judge ("ALJ") [R. 62], and on January 11, 2008, ALJ Richard Vogel held a hearing on Plaintiff's claims [R. 351–72].

On March 11, 2008, the ALJ issued his decision, finding Plaintiff not disabled. [R. 13–26.] Plaintiff filed a request for review of the ALJ's decision with the Appeals Council [R. 9], which denied review on March 20, 2009 [R. 3–6]. Plaintiff commenced an action for judicial review in this Court, Civil Action No. 2:09-01307-RSC, and on December 30, 2009, upon the Commissioner's motion to remand the case, the Court remanded the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), *id.*, Docket Entries 19, 20. On June 10, 2010, pursuant to the Order of the Court, the Appeals Council remanded Plaintiff's case to ALJ Vogel[4] [R. 390–91], who conducted a second hearing on Plaintiff's claims on October 8, 2010 [R. 477–94].

---

[3] Plaintiff's 2006 applications for DIB and SSI were not found in the record before the Court.

[4] On remand, the Appeals Council directed the ALJ to further evaluate Plaintiff's mental impairment in accordance with the special technique described in 20 C.F.R. §§ 404.1520a, 416.920a; further evaluate Plaintiff's subjective complaints and provide rationale consistent with the Social Security regulations governing evaluation of symptoms; give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale, including specific references to evidence of record supporting the assessed limitations; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. [R. 390–91.]

On October 29, 2010, the ALJ issued a partially favorable decision. [R. 377–87.] Following his review of the evidence, the ALJ found Plaintiff had the following severe impairments: a lumbar annular tear and borderline intellectual functioning. [R. 379, Finding 3.] The ALJ also found Plaintiff had nonsevere impairments, including arthritis, sinusitis, migraines, dyspnea, GERD, left arm numbness, and depression. [R. 380.] However, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 [*id.*, Finding 4]; the ALJ specifically considered Listing 1.04 with respect to Plaintiff's back problems and Listing 12.05C with respect to Plaintiff's mental impairment [R. 380–81].

Further, the ALJ found Plaintiff retained the residual functional capacity to

> sit, stand, and walk each for 6 hours of an 8-hour day; frequently lift/carry 10 pounds; occasionally lift 20 pounds; and never climb, crawl, or be exposed to hazards. She would need the flexibility to sit or stand at will for 10 minutes during each work hour. She would be further restricted from work requiring complex reading, writing or math.

[R. 381, Finding 5.] The ALJ also found Plaintiff has been unable to perform any past relevant work since August 26, 2005. [R. 385, Finding 6.]

The ALJ noted that prior to the established disability onset date, Plaintiff was closely approaching advanced age and that on October 18, 2009, Plaintiff's age category changed to an individual of advanced age. [R. 385, Finding 7.] Accordingly, prior to October 18, 2009, transferability of job skills was immaterial to the determination of disability, and the ALJ found there were jobs in the national economy Plaintiff could have performed. [R. 385–86, Findings 9–10.] The vocational expert testified Plaintiff could perform light,

unskilled occupations (SVP 2) such as ticket seller and stock checker, and the ALJ concluded a finding of "not disabled" was appropriate under the framework of Medical-Vocational Guidelines Rule 202.11. [*Id.*] However, on October 18, 2009, when Plaintiff's age category changed, Plaintiff's age, education, work experience, and residual functional capacity dictated there were no jobs that existed in significant numbers Plaintiff could perform. [R. 387, Finding 11.] Accordingly, the ALJ found Plaintiff became disabled on October 18, 2009. [*Id.*, Finding 12.] Plaintiff filed this action for judicial review on December 29, 2010, seeking an award of benefits from August 26, 2005 rather than October 18, 2009. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred by (1) failing to find Plaintiff met Listing 12.05C [Doc. 14 at 8–9; Doc. 16 at 1–2] and (2) conducting a flawed credibility analysis, which included improperly discrediting Plaintiff's subjective complaints and erroneously drawing unfavorable inferences from Plaintiff's inability to afford medical treatment [Doc. 14 at 9–11; Doc. 16 at 2]. Plaintiff seeks an Order directing the Commissioner to award benefits for a disability commencing August 26, 2005. [Doc. 14 at 11; Doc. 16 at 2–3.]

The Commissioner contends the ALJ's decision that Plaintiff's disability commenced October 18, 2009 was supported by substantial evidence. [Doc. 15 at 14.] Specifically, the Commissioner argues the ALJ reasonably determined Plaintiff's condition did not meet Listing 12.05C [*id.* at 15–18] and the ALJ properly evaluated Plaintiff's credibility [*id.* at 18–19]. The Commissioner further contends that, if the Court determines the ALJ erred, the appropriate remedy is remand for further proceedings rather than an award of benefits. [*Id.* at 20.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "'allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ),'" not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the

5

Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court

to find the plaintiff disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. §

405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings. *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

*Id.* § 423(d)(1)(A).

## I.   The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  20 C.F.R. §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  See 20 C.F.R. §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the

10

combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]   20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).   At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.   20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.   *See* 20 C.F.R. §§ 404.1520(f)–(g),

---

[6] The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7] Residual functional capacity is "the most [a claimant] can do despite [his] limitations."   20 C.F.R. § 404.1545(e)

416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the

ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of

examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig,* 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman*, 829 F.2d at 518.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...

**FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31, 898-02 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996), which is consistent with SSR 90-1p. SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *See also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.   Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**The ALJ Improperly Determined There Was No Evidence of Adaptive Deficits**

Plaintiff contends the ALJ erred by failing to find Plaintiff met Listing 12.05C. [Doc. 14 at 8–9; Doc. 16 at 1–2.] The Commissioner does not dispute Plaintiff meets the requirements of subpart C of Listing 12.05; rather, the Commissioner contends there is no evidence of significant deficits in adaptive behavior manifested before age 22, which is a finding required to meet Listing 12.05. [Doc. 15 at 16.] In reply, Plaintiff argues the ALJ improperly relied on Plaintiff's previous work history to prove non-disability; heard credible evidence at the hearing that Plaintiff was functionally illiterate and needed help filling out basic forms and reading a newspaper; and heard credible evidence that Plaintiff needed help dressing and brushing her hair. [Doc. 16 at 2.] For the reasons explained below, the Court finds the ALJ's decision is not supported by substantial evidence because the ALJ erroneously concluded there was no objective evidence of adaptive deficits manifested during Plaintiff's developmental period.

### *Criteria of Relevant Listing*

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the

18

evidence of the claimant's symptoms. *See Cook*, 783 F.2d at 1173 (stating that without

identifying the relevant listings and comparing the claimant's symptoms to the listing

criteria, "it is simply impossible to tell whether there was substantial evidence to support

the determination"); *Beckman v. Apfel*, No. WMN-99-3696, 2000 WL 1916316, at *9 (D.

Md. Dec. 15, 2000) (unpublished opinion) ("In cases where there is 'ample factual support

in the record' for a particular listing, the ALJ must provide a full analysis to determine

whether the claimant's impairment meets or equals the listing." (quoting *Cook*, 783 F.2d

at 1172)). In this case, the ALJ identified Listing 12.05C as a relevant listing [R. 380],

which the parties do not dispute. Listing 12.05C reads as follows:

> Mental retardation: Mental retardation refers to significantly
> subaverage general intellectual functioning with deficits in
> adaptive functioning initially manifested during the
> developmental period; i.e., the evidence demonstrates or
> supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through
> 70 and a physical or other mental impairment imposing an
> additional and significant work-related limitation of function;
>
> . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet Listing 12.05, a claimant must satisfy the "diagnostic description" in the

introductory paragraph and any one of the four sets of criteria—A, B, C, or D. *Id.* § 12.00A.

The diagnostic description describes mental retardation as "significantly sub-average

general intellectual functioning with deficits in adaptive functioning." *Id.* § 12.05. The

Administration "has never adopted a standard of measurement for the term 'deficits in adaptive functioning' in the capsule definition of Listing 12.05." *Wall v. Astrue*, 561 F.3d 1048, 1073 (10th Cir. 2009) (Holloway, C.J., dissenting). The Administration has noted, however, that the definition of mental retardation in the listings is "consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations."[9] Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018-01, at 20,022 (Apr. 24, 2002). *But see Cox v. Astrue*, 495 F.3d 614, 618 n.4 (8th Cir. 2007) (noting that "the medical standard for mental retardation is not identical to the legal standard"). Medical professional organizations have stated that deficits in "adaptive functioning" can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed., Text Revision 2000) [hereinafter DSM-IV-TR]) (noting the similarity between the American Association on Mental Retardation and the American Psychiatric Association's definitions of mental

---

[9] The Administration explained that, in the United States, each of the four major professional organizations has its own definition. Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018-01, at 20,022 (Apr. 24, 2002). However, although each requires "significant deficits in intellectual functioning," which is evidenced by low IQ scores, "age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations." *Id.* The Administration has discussed the definitions utilized by the American Psychiatric Association but has specifically stated that it endorses no organization's methodology over another. *Id.* In fact, when the Administration revised the listings in 2002, it declined a proposal to incorporate the American Psychiatric Association definition of mental retardation into Listing 12.05. *Id.* The Administration's definition "establishes the necessary elements, while allowing use of any of the measurement methods recognized and endorsed by the professional organizations." *Id.* In this case, the Court refers to the definition in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders*.

retardation[10]).  Further, to satisfy the "diagnostic description" in the introductory paragraph, the claimant's deficits in adaptive functioning must have "initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[11]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

*Adaptive Deficits*

The DSM-IV-TR defines mental retardation as a combination of "significantly sub-average intellectual functioning (an IQ of approximately 70 or below)" and "significant limitations in adaptive functioning" in at least two skill areas; thus, a diagnosis of mental retardation includes a finding of at least two deficits in adaptive functioning.  DSM-IV-TR, *supra*, at 41.  As stated above, the skill areas include communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.  *Id.*  Further, functional illiteracy in and of itself is a deficit in adaptive functioning.  *Davis v. Astrue*, No. 2:07-1621, 2008 WL 1826493, at *4 (D.S.C. Apr. 23, 2008) (citing DSM-IV-TR, *supra*, at 40).

*Manifestation During the Developmental Period*

The Fourth Circuit has recognized that the regulations "expressly define mental retardation as denoting 'a lifelong condition.'"  *Branham*, 775 F.2d at 1274 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(B)(4)).  A claimant does not have to present

---

[10] The Fourth Circuit has approved the use of the American  Association of Mental Retardation's standards for measuring adaptive skills in reviewing the denial of a writ of habeas corpus under 28 U.S.C. § 2254.  *See Green v. Johnson*, 515 F.3d 290, 302 (4th Cir. 2008), *cert. denied*, 128 S. Ct. 2999 (2008) (finding Virginia Supreme Court's determination that the petitioner had failed to show he was mentally retarded was not contrary to clearly established federal law).

[11] Medically, a diagnosis of mental retardation requires a finding that the patient's intellectual limitations began in childhood.  DSM-IV-TR, *supra*, at 54.

evidence of an IQ test before age 22 to be found mentally retarded under Listing 12.05.

*See id.* (stating that "there may be many reasons why an individual would not have had the opportunity or need to have a formal intelligence quotient test until later in life"). Evidence of illiteracy despite a claimant's education supports a finding that the claimant's mental retardation occurred before age 22. *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir. 1988). Additionally, a diagnosis of mental retardation supports a finding that the claimant's mental retardation occurred before age 22. *See* DSM-IV-TR, *supra*, at 47 (stating that a diagnosis of mental retardation requires an onset before age 18). Moreover, "in the absence of any evidence of a change in a claimant's intelligence functioning, it *must be assumed* that the claimant's IQ remained relatively constant." *Luckey v. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) (citing *Branham*, 775 F.2d at 1274) (emphasis added).

### The ALJ's Decision

The ALJ evaluated Plaintiff's mental impairment, or combination of impairments, under Listing 12.05C and found the medical evidence did not show Plaintiff's limited mental capacity was representative of life-long mental retardation. [R. 380–81.] In support of his conclusion, the ALJ stated,

> While the evidence of record does not document any IQ scores in the required range prior to age 22, I have given [Plaintiff] the benefit of the doubt that she exhibited subaverage general intellectual functioning prior to age 22 based on the school records documenting her placement in special education classes. However, the record simply does not demonstrate that [Plaintiff's] deficits in intellectual functioning are coupled with deficits in adaptive behavior present before [she] attained age 22 as there is no evidence in the record objectively demonstrating the adaptive deficits during that time frame. Further, despite the allegations of mental retardation, the evidence documents that the claimant was able to obtain her driver's license and has a history of

skilled work as a shipping clerk and semi-skilled work as a cashier and stock clerk.

[R. 381.]   Thus, the ALJ concluded Plaintiff's mental impairment, or combination of impairments, did not meet Listing 12.05C because (1) there was no record evidence objectively demonstrating adaptive deficits during the developmental period, (2) Plaintiff obtained a driver's license, and (3) Plaintiff's work history was inconsistent with her allegations of mental retardation.

### *Analysis*

First, the Court finds the ALJ improperly relied on Plaintiff's work history to determine there was no evidence of adaptive deficits.  The Commissioner "may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met: When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.'" *Luckey*, 890 F.2d at 669 (quoting *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)).  Therefore, to the extent the ALJ relied on Plaintiff's work history to find Plaintiff did not satisfy the criteria of Listing 12.05C, the ALJ's decision is in error.

Second, the Court cannot find substantial evidence supports the ALJ's conclusion that there was *no* objective evidence of adaptive deficits manifested during Plaintiff's developmental period because the ALJ failed to discuss record evidence that contradicts his conclusion.   For example, Gene J. Sausser, Ph.D., found specific diagnostic implications of mild mental retardation under DSM-IV-TR AXIS II[12] and a current Global

---

[12]The multiaxial system of the DSM-IV-TR

involves an assessment on several axes, each of which refers to a different domain of information that may help the clinician plan treatment and predict

Assessment of Functioning ("GAF") score of 53.[13]  [R. 220.]  As explained above, based on the definition of mental retardation in DSM-IV-TR, the very diagnosis of mental retardation by Dr. Sausser includes a finding of at least two deficits in adaptive functioning, *see* DSM-IV-TR, *supra*, at 41, and the regulations "expressly define mental retardation as denoting 'a lifelong condition,'" *Branham*, 775 F.2d at 1274 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(B)(4)), meaning these deficits would have been present during Plaintiff's developmental period.   Moreover, Dr. Sausser specifically found Plaintiff functioned on a third grade level in math, a fourth grade level in spelling, and a sixth grade level in reading [R. 220] even though she completed the tenth grade [R. 216],

outcome.   There are five axes included in the DSM-IV multiaxial classification:

| | |
|---|---|
| Axis I | Clinical Disorders |
| | Other Conditions That May Be a Focus of Clinical Attention |
| Axis II | Personality Disorders |
| | Mental Retardation |
| Axis III | General Medical Conditions |
| Axis IV | Psychosocial and Environmental Problems |
| Axis V | Global Assessment of Functioning |

The use of the multiaxial system facilitates comprehensive and systematic evaluation with attention to the various mental disorders and general medical conditions, psychosocial and environmental problems, and level of functioning that might be overlooked if the focus were on assessing a single presenting problem.   A multiaxial system provides a convenient format for organizing and communicating clinical information, for capturing the complexity of clinical situations, and for describing the heterogeneity of individuals presenting with the same diagnosis.   In addition, the multiaxial system promotes the application of the biopsychosocial model in clinical, educational, and research settings.

DSM-IV-TR, *supra*, at 27.

[13]A GAF score of 53 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV-TR, *supra*, at 34.  Dr. Sausser also assessed a GAF of 75 for the past year [R. 220], which indicates that, "if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork), DSM-IV-TR, *supra*, at 34.

demonstrating a deficit in "functional academic skills," one of the skill areas under the DSM-IV-TR definition of mental retardation, DSM-IV-TR, *supra*, at 41. Further, Dr. Sausser's recommendation that, if awarded benefits, the funds would be best managed by another responsible adult [R. 221] could support a finding of deficits in "self-care" and/or "home living," two additional skill areas under the DSM-IV-TR definition of mental retardation.[14]

However, the record also contains the opinion of Mark A. Williams, Ph.D., a DDS consultant who determined Plaintiff's history of adaptive functioning did not support a finding of mental retardation. [R. 210.] Further, the ALJ found the record failed to reveal any type of significant abnormalities related to Plaintiff's mental capacity that one would expect if Plaintiff were disabled. [R. 384.] Specifically, the ALJ noted Plaintiff reported to Dr. Sausser in August 2008 that she put dishes in the dishwasher, worked on the computer, and cooked simple meals and had two good friends, although she did not socialize due to pain. [*Id.*; *see also* R. 217 (Dr. Sausser's report).] Additionally, the ALJ noted that, upon testing by Dr. Sausser, Plaintiff could perform addition, subtraction, multiplication, and division but had difficulty with fractions and percentages. [R. 384; *see also* R. 219 (Dr. Sausser's report).] The ALJ also noted Dr. Sausser assessed a GAF

---

[14] Additionally, the ALJ concluded Plaintiff had some difficulties in adaptive functioning [*see* R. 380 (noting Plaintiff experienced mild restriction in activities of daily living; mild difficulties in maintaining social functioning; mild to moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration)], but based on the ALJ's ultimate conclusion as to whether Plaintiff met Listing 12.05C, presumably the ALJ concluded these difficulties did not manifest themselves prior to age 22 [*see* R. 381 ("[T]here is no evidence in the record objectively demonstrating these adaptive deficits [before Plaintiff attained age 22].")].

score of 75, indicating no more than slight impairment in social, occupational, or school functioning.[15]  [R. 384; *see also* R. 220 (Dr. Sausser's report).]

Therefore, while the Court finds the ALJ's decision that there was *no* objective evidence of adaptive deficits during Plaintiff's developmental period is not supported by substantial evidence, the Court finds the evidence of adaptive deficits during the developmental period is contradicted by other evidence suggesting Plaintiff did not have adaptive deficits.  Because it is the duty of the ALJ, not the responsibility of the courts, to resolve conflicts in evidence, *Craig*, 76 F.3d at 589 (quoting *Walker*, 834 F.2d at 640); *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520, the Court recommends the case be remanded for further consideration rather than awarding benefits to Plaintiff, *see Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984) ("If the record as presented to the ALJ contains substantial evidence supporting a finding that the claimant was disabled, then a reviewing court may reverse and remand the case to the District Court for entry of an order granting benefits to the claimant."); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982) (stating reversal is appropriate when a rehearing would simply delay the claimant's receipt of benefits (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981))).

---

[15] Interestingly, the ALJ cited Dr. Sausser's report when the report supported the ALJ's position but, as explained above, neglected the portions of Dr. Sausser's report that contradicted the ALJ's position.  Further, the ALJ failed to indicate the weight he gave to Dr. Sausser's opinion.  The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178).  While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  Without discussion of the contradictory statements in Dr. Sausser's opinion and the weight the ALJ gave Dr. Sausser's opinion, the Court cannot find the ALJ's decision is supported by substantial evidence.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly consider whether there was evidence of adaptive deficits during Plaintiff's developmental period is a sufficient basis to remand the case to the Commissioner—and, upon reconsideration, the Commissioner may determine the findings at Step 3 of the sequential analysis direct a decision that Plaintiff was disabled as of August 26, 2005—the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 10, 2012
Greenville, South Carolina